**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RUBINA KELLEY, *et al.*,

        Plaintiffs,

        v.

SIX FLAGS GREAT ADVENTURE, *et al.*,

        Defendants.

Civil Action No. 25-16710 (MAS) (RLS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Six Flags Great Adventure LLC's (improperly pled as Six Flags Great Adventure) ("Defendant" or "Six Flags") Motion to Dismiss or in the Alternative for a More Definite Statement ("Motion to Dismiss") (ECF No. 7) the Third, Fourth, Fifth, and Sixth Counts of Plaintiffs Rubina Kelley ("Kelley") and Rhonda Rutan's ("Rutan" and collectively with Kelley, "Plaintiffs") Complaint (ECF No. 1). Plaintiffs opposed (ECF No. 10), and Defendant replied (ECF No. 12). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated below, the Court grants Defendant's Motion to Dismiss.

I.    **BACKGROUND**[1]

A.    **Factual Background**

Plaintiffs are former employees of Six Flags. (*See* Compl., Factual Background ¶¶ 1-5, ECF No. 1 at *12-25.)[2] Kelley is sixty-eight years old and was formerly employed by Defendant for over forty-three years, and until her termination held the position of Safari Warden within the Safari Department. (*Id.* ¶¶ 1-2.) Rutan is fifty-five years old and was formerly employed by Defendant for over eighteen years, and until her termination held the position of Mega Vertebra Curator within the Safari Department. (*Id.* ¶¶ 3-4.) Defendant terminated Kelley's employment on March 8, 2024, and Rutan's employment on March 5, 2025, citing "improper behavior" as the reason for both terminations. (*Id.* ¶¶ 6-7.) This happened after another employee, Thomas Clark ("Clark"), "who already held a full-time Safari Warden position," alleged the misconduct. (*Id.* ¶ 8.) Clark, a male who is younger than forty years old, "was thereafter scheduled to work in the position formerly held by . . . Kelley with significantly increased frequency." (*Id.* ¶¶ 8-9.)

Throughout the course of their employment Plaintiffs "consistently demonstrated exemplary performance, professionalism, and unwavering dedication to their roles and responsibilities." (*Id.* ¶ 5.) Kelley, however, "was routinely subjected to inquiries from . . . Safari Manager Jason Holloway [('Holloway')] and Safari Director Dr. William Rives [('Rives')] . . . regarding if and when she planned to retire." (*Id.* ¶ 12.) These "inquiries were made regularly and occurred no less than twice per month over an extended period." (*Id.* ¶ 13.) Such "repeated focus by management on . . . Kelley's retirement . . . reinforc[ed] [Kelley's] belief that Defendant

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[2] Page numbers preceded by an asterisk refer to the page number atop the ECF header.

intended to remove her from her position based on her age and in furtherance of a calculated effort to replace her with a younger employee." (*Id.* ¶ 14.)

Rutan and several other employees, moreover, "witnessed . . . Holloway actively training a substantially younger employee, Nicole Reiff [('Reiff')], to assume . . . Rutan's responsibilities." (*Id.* ¶ 15.) "Holloway regularly worked with . . . Reiff on . . . Rutan's scheduled days off, particularly with respect to duties involving the elephants and giraffes." (*Id.* ¶ 16.) Rutan was additionally "subjected to repeated incidents of unprofessional, demeaning, and aggressive conduct by . . . Rives." (*Id.* ¶ 17.) Specifically, "Rives routinely yelled at . . . Rutan, cursed at her, and made disparaging remarks in front of other staff." (*Id.* ¶ 18.) One such incident involved Rutan calling "for veterinary staff to examine a young giraffe that appeared fatigued." (*Id.* ¶ 19.) "After . . . Rives evaluated the animal and concluded that the fatigue was 'normal,' he . . . yell[ed] at . . . Rutan and called her 'retarded.'" (*Id.*) Another incident occurred when, "during a staff meeting . . . Rutan politely requested that the air conditioner be turned on." (*Id.* ¶ 20.) In response, Rives asked Rutan if she was "going through menopause" and told her that it was "not hot in here." (*Id.*) Multiple staff members were present for that exchange. (*Id.*)

B.    **Procedural Background**

Plaintiffs initially filed their Complaint on September 5, 2025, in the Superior Court of New Jersey, Law Division, Ocean County asserting seven causes of action: (1) age discrimination in violation of the New Jersey Law Against Discrimination (the "NJLAD") N.J.S.A. 10:5-4, *et seq.* ("Count One"); (2) hostile work environment ("Count Two"); (3) negligence ("Count Three"); (4) discrimination in violation of Defendant's own policies ("Count Four"); (5) breach of contract pursuant to *Woolley v. Hoffmann-La Roche, Inc.*, 491 A.2d 1257 (N.J. 1985), *modified*, 499 A.2d 515 (N.J. 1985) ("Count Five"); (6) retaliatory and wrongful actions pursuant to *Pierce v. Ortho*

3

*Pharma. Corp.*, 417 A.2d 505, 512 (N.J. 1980) ("Count Six"); and (7) one count naming fictitious agents and servants as defendants ("Count Seven"). (*Id.* at *15-19.) Defendant removed the matter to this Court. (Notice of Removal *1-6, ECF No. 1.)

Defendant thereafter filed the instant Motion to Dismiss. (Def.'s Mot. to Dismiss, ECF No. 7.) Plaintiffs opposed (Pls.' Opp'n Br., ECF No. 10), and Defendant replied (Def.'s Reply Br., ECF No. 12).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure[3] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556

---

[3] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

4

U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    **DISCUSSION**

Defendant makes three arguments in support of its motion to dismiss Counts Three through Six: (1) Plaintiffs' *Pierce* claim is barred because it does not seek to vindicate interests independent of those protected by the NJLAD; (2) Plaintiffs' contract and negligence claims are duplicative of the NJLAD claims and therefore must be dismissed; and (3) Plaintiffs' breach of contract claims are not viable as a matter of law. (Def.'s Moving Br. 4-12, ECF No. 7-1.) The Court addresses each argument in turn.

### A.    **Plaintiffs' *Pierce* Claim—Count Six**

Defendant argues that Count Six should be dismissed because Plaintiffs' *Pierce* claim does not seek to vindicate interests independent of those protected by the NJLAD. (*Id.* at 6-7.)

The New Jersey Supreme Court has held that an employee has a common law claim for wrongful discharge, "when the discharge is contrary to a clear mandate of public policy." *Pierce*, 417 A.2d at 512. New Jersey has since recognized "*Pierce* claims" for discrimination, whistleblowing, and retaliation. *See Shakib v. Back Bay Rest. Grp., Inc.*, No. 10-4564, 2011 WL 4594654, at *8 (D.N.J. Sep. 30, 2011). "The sources of public policy" that can support a *Pierce* claim include: (1) "legislation"; (2) "administrative rules, regulations or decisions;" and (3) "judicial decisions." *Id.* (citation omitted). Critically though, "more is needed than simply the breach of public policy affecting a single person's rights to constitute the breach of a 'clear

mandate' of public policy that *Pierce* requires." *Hennessey v. Coastal Eagle Point Oil Co.*, 609 A.2d 11, 19-20 (N.J. 1992). A plaintiff must adequately allege not only that they were discriminated or retaliated against "but that his or her resulting discharge violated a clear mandate of public policy." *See Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1184 (N.J. 2008). As such, "[i]f an employee does not point to a clear expression of public policy, the court can grant a motion to dismiss[.]" *Pierce*, 417 A.2d at 513. *Pierce* claims, moreover, are preempted by the NJLAD when they seek to vindicate interests that are protected by the NJLAD. *Est. of Zoto v. Cellco P'ship*, No. A-2307-20, 2023 WL 2670713, at *10 (N.J. Super. Ct. App. Div. Mar. 29, 2023).

Here, Plaintiffs fail to sufficiently allege that *any* public policy was affected. (*See generally* Compl.) Plaintiffs merely allege that Defendant's actions "were retaliatory and wrongful." (*Id.* Count Six ¶ 2.) Further, the factual allegations of Plaintiffs' Complaint *all* relate to the same alleged discriminatory conduct as Plaintiffs' NJLAD claim and are therefore preempted by Plaintiffs' NJLAD claims. *See, e.g., Russelman v. ExxonMobil Corp.*, No. 12-752, 2012 WL 3038589, at *4 (D.N.J. July 25, 2012) (explaining that when *Pierce* claims are based on the same public policy as the NJLAD, the *Pierce* claims are preempted by the NJLAD claims); *Hamarneh v. United Airlines*, No. 24-5962, 2025 WL 957421, at *7 (D.N.J. Mar. 31, 2025) (dismissing *Pierce* claim because: (1) plaintiff "mad[e] no specific allegation that any particular area of public policy was purportedly breached"; and (2) "courts have consistently held the NJLAD to preempt duplicative common law discrimination claims" (citation modified)); *Berman v. Ballet Makers, Inc.*, No. 08-1032, 2009 WL 952497, at *1-2 (D.N.J. Apr. 7, 2009) (denying plaintiff's motion to amend complaint because plaintiff's "*Pierce* claim for wrongful termination [was] preempted by the [NJ]LAD"); *Bell v. KA Indus. Servs., LLC*, 567 F. Supp. 2d 701, 709 n.12 (D.N.J. 2008) (noting that a plaintiff's "failure

6

to clearly identify the expression of public policy" in the complaint "itself would be sufficient to dismiss" a *Pierce* claim).

The Court, accordingly, dismisses Count Six of Plaintiffs' Complaint.

## B.    Plaintiffs' Contract and Negligence Claims—Counts Three, Four, and Five

Defendant argues that Counts Three,[4] Four, and Five of Plaintiffs' Complaint should be dismissed because they are preempted by the NJLAD. (Def.'s Moving Br. 7-9.) Count Four alleges that "Defendant's actions in discriminating against Plaintiffs on the basis of their age violated Defendant's own stated policies." (Compl. Count Four ¶ 2.) Count Five alleges that pursuant to *Woolley*, and its progeny, "Defendant's actions constitute a breach of contract with Plaintiffs as Defendant's conduct was in violation of its own policies and procedures." (*Id.* Count Five ¶¶ 2-3.)

New Jersey courts, however, are clear that breach of contract claims that seek "damages for discriminatory acts on the basis of . . . statement[s] in a policy manual [are] preempted by the NJLAD[.]" *Maxson v. YRC Inc.*, No. 14-4653, 2015 WL 4394272, at *7 (D.N.J. July 16, 2015) (citation modified); *Power v. Bayonne Bd. of Educ.*, No. 16-5091, 2017 WL 1536221, at *8 (D.N.J. Apr. 26, 2017) (same). Here, Counts Four and Five both involve allegations that Defendant discriminated against Plaintiffs based on their ages in violation of Defendant's own policies. (Compl. Counts Four, Five.) Such claims, moreover, seek "to vindicate the same rights as those recognized by the NJLAD" which are "duplicative of the statutory remedies available" and thus preempted by the NJLAD. *Karipidis v. ACE Gaming LLC*, No. 09-3321, 2010 WL 2521209, at *9

---

[4] Plaintiffs voluntarily withdraw, without prejudice, Count Three of the Complaint. (Pls.' Opp'n Br. 1 n.1) The Court, accordingly, does not address Defendant's arguments regarding Count Three, and Count Three is dismissed. *See Greenspan v. CDW LLC*, No. 21-12734, 2022 WL 993388, at *2 (D.N.J. Mar. 31, 2022).

(D.N.J. June 9, 2010); *see also Doe v. Walgreen Nat'l Corp.*, No. 21-20236, 2022 WL 16552820, at *5 (D.N.J. Oct. 31, 2022) ("[T]he NJLAD preempts duplicative common law claims" (citation omitted)); *Brown v. Joel Tanis & Sons, Inc.*, No. 13-2984, 2014 WL 2705262, at *4 (D.N.J. June 13, 2014) (same); *DiMare v. Metlife Ins. Co.*, No. 07-4268, 2008 WL 2276007, at *4 (D.N.J. June 2, 2008) (dismissing common law claims as duplicative of NJLAD claim), *aff'd*, 369 F. App'x 324 (3d Cir. 2010); *Gaines v. United Parcel Serv., Inc.*, No. 13-3709, 2014 WL 1450113, at *6-9 (D.N.J. Apr. 14, 2014) (dismissing common law claims as duplicative of NJLAD claim).

The Court therefore finds that Plaintiffs' common law claims are duplicative of and preempted by their NJLAD claim. The Court, accordingly, dismisses Counts Three, Four, and Five of Plaintiffs Complaint.[5]

## IV.    CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss is granted. The Court will issue an Order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

DATED: JUNE 22nd 2026

---

[5] Because the Court finds that Count Five is preempted by the NJLAD, it does not reach the parties' arguments regarding *Woolley*. *See Everson v. JPMorgan Chase Bank*, No. 12-07288, 2013 WL 1934666, at *1 n.2 (D.N.J. May 8, 2013); *see also Kairawala v. GE Aviation*, No. 09-0398, 2009 WL 1973509, at *2 (D.N.J. July 7, 2009) (explaining that plaintiff's argument regarding the *Woolley* doctrine was "immaterial" to the court's dismissal of plaintiff's common law contract claims "for NJLAD preemption purposes"). Moreover, because the Court grants Defendant's Motion to Dismiss, it does not reach Defendant's alternative Motion for a More Definite Statement.